**PINE RIDGE COAL COMPANY, a corporation, Plaintiff–Appellee,**

v.

**LOCAL 8377, UNITED MINE WORKERS OF AMERICA, an unincorporated labor association; Local 6426, United Mine Workers of America, an unincorporated labor association, Defendants–Appellants.**

No. 97–2666.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1999.

Decided Aug. 4, 1999.

**ARGUED:** William D. Ryan, District 17, UMWA, Charleston, West Virginia, for Appellants. Steven Paul McGowan, Steptoe & Johnson, Charleston, West Virginia, for Appellee. **ON BRIEF:** Irene P. Keeley, Steptoe & Johnson, Charleston, West Virginia, for Appellee.

Before WILKINSON, Chief Judge and NIEMEYER, Circuit Judge, and MOON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published per curiam opinion.

## OPINION

PER CURIAM:

On March 14, 1995, United Mine Workers of America, Locals 8377 and 6426 ("UMWA"), engaged in an unauthorized

work stoppage at Pine Ridge Coal Company's ("Pine Ridge") Big Mountain Complex and related mining facilities in Boone County, West Virginia. The day of this "wildcat strike," which lasted three shifts, Pine Ridge filed a complaint in the district court and obtained a temporary restraining order to end the strike. In addition, pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, Pine Ridge sought recovery of its fixed daily costs for the period of the strike. The district judge granted summary judgment to Pine Ridge on the liability issue. UMWA does not appeal that order. By agreement of the parties, the district judge referred the damages issue to the magistrate judge. After the magistrate judge permitted the parties to file motions for summary judgment, he granted summary judgment to Pine Ridge in the amount of $85,500 plus post-judgment interest.

UMWA contends that (1) the magistrate judge was not authorized to order cross motions on summary judgment on the damages issue, and (2) the court erred in the calculation of damages because a genuine issue of fact exists regarding the amount of damages. We disagree and affirm the magistrate judge's grant of summary judgment on the damages issue.

### I.

After the district judge granted summary judgment on the liability issue, he entered an amended scheduling order on April 17, 1997, setting the damages issue for trial on September 23, 1997. However on May 13, 1997, he entered another order providing that "[p]ursuant to the provisions of 28 U.S.C. § 636(c) and voluntary consent of the parties, it is hereby ordered that this action be referred to United States Magistrate Judge Jerry D. Hogg to conduct any and all further proceedings in this case, including jury trial and entry of a final judgment." Magistrate Judge Hogg subsequently entered an order adopting the provisions of the April 17, 1997 scheduling order.

In late August, subsequent to the expiration of the discovery deadline, Pine Ridge filed a motion for summary judgment with two supporting affidavits. The magistrate judge denied UMWA's motion objecting to that filing and set dates for UMWA to file its brief in opposition as well as a cross motion for summary judgment. After hearing oral argument, the magistrate judge granted Pine Ridge's motion for summary judgment and awarded damages in the amount of $85,500 plus post-judgment interest. This figure represents the total of the fixed costs for one day at each one of Pine Ridge's facilities affected by the strike.

### II.

The first issue is whether the magistrate judge erred in allowing the parties to file their cross motions for summary judgment on the damages issue. The magistrate judge scheduled a pretrial conference for September 8, 1997. Prior to September 8, Pine Ridge filed its motion for summary judgment. At the pretrial conference, UMWA objected to the filing of the motion on the grounds that the district judge's April 17, 1997 amended scheduling order did not provide for dispositive motions and the parties contemplated a jury trial on the issue of damages. The magistrate judge ruled that Pine Ridge's motion for summary judgment be accepted as timely filed and set September 25, 1997 for UMWA to respond to the motion for summary judgment. The order also provided a date for UMWA to file a cross motion for summary judgment. The trial date was then rescheduled. UMWA filed a memorandum of law in opposition to Pine Ridge's motion for summary judgment, but filed no affidavits contradicting the facts set forth in Pine Ridge's affidavits. On November 4, 1997, the magistrate judge granted Pine Ridge's motion for summary judgment and awarded damages based on daily fixed costs as reasonable and neces-

sary expenditures incurred during the March 14, 1995 strike.

UMWA argues that because the amended scheduling order, entered on April 17, 1997 by the district court judge and adopted by the magistrate judge, did not indicate a deadline for filing dispositive motions, then Pine Ridge was precluded from filing its motion for summary judgment. This argument is without merit.

The May 13, 1997 order referred the case to the magistrate judge to "conduct any and all further proceedings in this case, including jury trial and entry of final judgment." The order was entered pursuant to 28 U.S.C. § 636(c). Section 636(c)(1) provides in part that "[u]pon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court...." Section 636(c)(3) provides in part that "[t]he consent of the parties allows a magistrate designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure."

Thus, by the terms of the May 13, 1997 order and § 636(c), the magistrate judge was substituted for the district judge with the same authority as that of the district judge. We interpret the language in the order referencing a jury trial as being merely inclusive of the powers of the magistrate judge, not limiting his powers. Therefore, the magistrate judge's ability to grant judgment on the damages issue was no different from that of the district judge.

Rule 56(c) mandates that summary judgment motions are to "be served at least 10 days before the time fixed for the hearing." Fed.R.Civ.P. 56(c). Pursuant to the pretrial order that was agreed to by both parties, the discovery deadline was August 15, 1997. Pine Ridge filed its motion for summary judgment on August 27, 1997, twelve days after the discovery cut-off and twelve days prior to the scheduled pretrial conference. It is irrelevant that the "hearing" was a pretrial conference, Fed.R.Civ.P. 16(c)(5), or that the magistrate judge and not the district court judge granted the summary judgment motion. Fed.R.Civ.P. 16(b) and 28 U.S.C. § 636. UMWA received ample notice of the motion. Therefore, the magistrate judge properly exercised his authority to hold that Pine Ridge's motion was timely and to order that cross motions be filed by UMWA.

### III.

UMWA claims that the magistrate judge erred in granting damages in the amount of Pine Ridge's fixed daily costs. Specifically, UMWA claims that the costs were not appropriately calculated and that fixed daily costs are not recoverable in this case.

We review the district court's summary judgment ruling on damages *de novo*. *Clark v. Alexander*, 85 F.3d 146 (4th Cir.1996); *Haavistola v. Community Fire Co.*, 6 F.3d 211, 214 (4th Cir.1993). Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Pine Ridge submitted two affidavits with its motion for summary judgment detailing the calculation method for its damages. The affidavit of E. Kent Hartsog, Director of Financial Planning for Eastern Associated Coal Corporation, states that "the General Ledger of Pine Ridge is maintained in accordance with Generally Accepted Accounting Principals ('GAAP') applied on a consistent basis;" and that "the damage amounts ... reflects [sic] the av-

erage actual fixed costs incurred for the work stoppage." Also, Hartsog's affidavit asserts that Pine Ridge would have generated production revenue sufficient to cover its fixed costs in the normal course of business had the work stoppage not occurred.

In the second affidavit, Paul E. Arbogast, managing partner for Ernst & Young, stated that upon review of Pine Ridge's calculation of damages, he found that the information contained therein was the type reasonably relied upon by accountants to determine damages when there is no claim for lost profits. The information reviewed by Arbogast included the exhibits attached to Pine Ridge's motion for summary judgment. These exhibits consisted of a detailed listing of the depreciation and administrative costs as part of the daily fixed costs as well as a computation of damages based on a percentage of Pine Ridge's annual fixed costs. Arbogast opined that Pine Ridge's calculations were proper and appropriately included as recoverable damages.

Fixed daily costs are those costs incurred regardless of whether the mines are operating.[1] The annual fixed costs for each mine affected by the strike was calculated. To arrive at the damage amount caused at each mine, the annual fixed cost for that mine was divided by the number of days the mine actually was in operation.[2] One fixed day costs for each mine was included for the total amount of $80,-500.

■ UMWA asserts that the only damages recoverable by Pine Ridge are those additional expenses incurred as a direct result of the interruption. These would include any actual monetary losses, such as loss of revenue or profits or an increase in daily costs. According to UMWA, because Pine Ridge presented no such evidence, then an award of damages based on daily fixed costs is inappropriate.

■ First, we hold that lost profits is not the only permissible method of calculating damages. When a union's unlawful activity reduces an employer's productive labor or output, fixed costs are recoverable to the extent the production costs for that time would have exceeded the fixed daily costs. *Sheet Metal Workers Int'l Ass'n, Local 223 v. Atlas Sheet Metal Co.*, 384

---

1. Here the costs include for each mine involved in the strike the following fixed costs:

   a. Salaries for supervisory and clerical employees plus the fringe benefits associated with those employees;
   b. Fringe benefits for hourly employees which are not based upon wages paid, including vacation and group health insurance;
   c. Workers' compensation benefits which are paid directly by the company to the claimant and which continue without regard for work stoppages, those benefits paid based upon a salaried and clerical employee wages and the normal cost, as actuarially determined, for federal black lung obligations;
   d. Electric power charges to the extent required to maintain the mine on idle status, as determined from the percentages reflected in Exhibit 6 to the Plaintiff's Memorandum law in Support of Motion for Summary Judgement, which is reasonably relied upon by accountants and financial planners making these calculations;

   e. Taxes and insurance not based upon production;
   f. Lease payments for equipment based upon fixed monthly payment amounts;
   g. The fixed cost component of outside services, which includes telephone, miscellaneous utility service, janitorial and security;
   h. Joint facility charges for support services allocated to operating mines, including charges for engineering, operational and safety type consulting services;
   i. Depreciation and amortization reflecting the cost of ownership utilization and passage of time with respect to assets utilized in the production and preparation of coal for market, which are incurred each month without regard for the level of production.

2. Daily fixed costs are generally calculated on the basis of days the facility planned or was scheduled to be operational. Because the actual number of days of operation were known, the actual days were used.

F.2d 101, 109 (5th Cir.1967); *Wagner Electric Corp. v. Local 1104, Int'l Union of Electrical, Radio and Machine Workers*, 496 F.2d 954, 957 (8th Cir.1974); *United Electrical Workers v. Oliver Corp.*, 205 F.2d 376, 387 (8th Cir.1953). Once a party has established the fact of damages, the court may estimate damages based on just and reasonable inferences drawn from the evidence submitted. *Wagner Electric Corp.*, 496 F.2d at 957.

■ Regarding UMWA's exception to the administrative costs and depreciation expenses, both of Pine Ridge's experts' affidavits contain statements that the exhibits calculating damages properly included depreciation and administrative expenses as part of the recoverable amount. Both experts support the contention that depreciation and administrative costs are appropriate where they constitute part of the actual loss sustained by the employer as the result of unlawful activity by the union. Here, the magistrate judge appropriately included administrative and depreciation costs in the determination of Pine Ridge's fixed daily costs because they were proven by the unrefuted evidence gleaned from an accounting of Pine Ridge's business records.

■ UMWA also attacks the denominator used in arriving at a daily fixed costs figure. Pine Ridge's experts calculated its daily fixed costs for each mine by dividing the total annual fixed production costs by the actual number of days each mine was in operation in 1995. UMWA asserts that daily fixed costs should not be based on the existence of activity in the mines because these expenditures occur every day of the year regardless of production; therefore, the appropriate number of days to use in calculating daily fixed costs should be 365. UMWA presented this argument to the magistrate judge in its brief in opposition, but failed to present any factual basis for it.

Because UMWA never put forth any evidence to contradict the affidavits supplied by Pine Ridge, the magistrate judge had no choice but to hold that the appropriate denominator to use in calculating damages is the number of days Pine Ridge operates the mine, not the total number of days in a year.

UMWA contends that summary judgment was not proper, notwithstanding that it filed no evidence to contradict that of Pine Ridge, because they were entitled to have a jury make reasonable inferences regarding their position on the calculation of Pine Ridge's damages. However, Rule 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (stating that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves ...").

■ Rule 56(e) requires that "affidavits submitted by the party defending against a summary judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2740, at 399 (1998). The only exemption against this mandate may be found in Rule 56(f), which allows a party to seek additional time to obtain evidence as long as he can present an affidavit putting forth "the reasons why he is unable to present the necessary opposing material ...." *Id.* No matter which approach is adopted, once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demon-

strating the existence of an issue of fact. Wright, Miller & Kane, § 2739, at 391.

In its motion for summary judgment, Pine Ridge submitted actual costs to the court that were verified by affidavits. To contradict the categories of fixed expenses or the methods used to calculate the fixed costs, UMWA needed to present to the magistrate judge one of two pieces of information. UMWA could have submitted an affidavit merely stating why certain evidentiary facts could not be presented with its motion. *Id.* at 398, 106 S.Ct. 2548. At that point, the magistrate judge would have had the option of refusing to grant summary judgment and ordering a continuance to allow affidavits to be taken or discovery to continue. *Id.* at 397, 106 S.Ct. 2548. The second choice would have been for UMWA to submit affidavits with alternate calculations to show what it claimed to be appropriate. However, UMWA failed to comply with either requirement. The magistrate judge, having found no genuine issue as to any material fact regarding Pine Ridge's damages, appropriately granted summary judgment in favor of Pine Ridge.

Accordingly we conclude that the magistrate judge's decision granting summary judgment on damages was proper and should be affirmed.

*AFFIRMED.*